**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**

CHAMBERS OF
J. Mark Coulson
UNITED STATES MAGISTRATE JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
P:(410) 962-4953 — F:(410) 962-2985

July 14, 2026

LETTER MEMORANDUM OPINION AND ORDER TO ALL COUNSEL OF RECORD

RE:   *Lisa W. v. Frank Bisignano, Social Security Administration*
      Civil No. 8:25-cv-02804-JMC

Dear Counsel:

Lisa Wenfield ("Plaintiff") petitioned this Court on August 26, 2025, to review the Social Security Administration's ("SSA" or "Defendant") final decision denying her claims for disability insurance benefits ("DIB").  (ECF No. 1).  The Court has considered the record in the case as well as the parties' dispositive filings.  (ECF Nos. 13, 17, 18).  No hearing is necessary.  *See* Loc. R. 105.6 (D. Md. 2025).  The Court must uphold an agency decision if the decision is supported by substantial evidence and was reached through application of the proper legal standard.  *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996).  Under that standard, I will affirm ALJ's and Appeals Council's determinations for the reasons explained below.

## I.     Procedural Background

Based on the arguments presented to the Court, it would suffice to say that Plaintiff has exhausted administrative remedies.  Similarly, the Court notes that the factual background below does not offer any guidance to resolve the present challenge to the ALJ's decision.

Plaintiff filed her applications for DIB on November 3, 2020, alleging that she became disabled on May 15, 2020 (Tr. 259-262).[1]  Plaintiff later amended the alleged onset date to December 1, 2020. *Id.* at 17.  The SSA initially denied Plaintiff's application, the SSA granted a partially favorable determination with an onset date of June 26, 2023 upon reconsideration.  *Id.* at 117-121, 142-145.  On August 14, 2023, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ") to challenge the alleged onset date. *Id.* at 146-49.  On October 30, 2024 and March 12, 2025, ALJ Chad Gendreau held a hearing for which Plaintiff appeared and testified on both dates. *Id.* at 38-100.  On May 20, 2025, the ALJ issued a partially favorable decision, finding

---

[1] When the Court cites to "Tr.," it is citing to the official transcript (ECF No. 9) filed in this case.  When citing to specific page numbers within the official transcript, the Court is referring to the page numbers provided in the lower right corner of the official transcript pages.

1

disability as of August 15, 2023.  *Id.* at 14-37.  The decision became final on June 26, 2025, when the Appeals Council denied Plaintiff's request for review.  *Id.* at 1-6. Subsequently, Plaintiff filed the instant action for judicial review under 20 C.F.R. §§ 404.984(c)–(d), 416.1484(c)–(d).

## II.    The ALJ's and Appeals Council's Decisions

In arriving at the decision to deny Plaintiff's claims, the ALJ followed the five-step sequential evaluation of disability set forth in the Secretary's regulations.  20 C.F.R. § 416.920. "To summarize, the ALJ asks at step one whether the claimant has been working; at step two, whether the claimant's medical impairments meet the regulations' severity and duration requirements; at step three, whether the medical impairments meet or equal an impairment listed in the regulations; at step four, whether the claimant can perform her past work given the limitations caused by her medical impairments; and at step five, whether the claimant can perform other work." *Mascio v. Colvin*, 780 F.3d 632, 634–35 (4th Cir. 2015).  If the first three steps do not yield a conclusive determination, the ALJ must then assess the claimant's RFC, "which is 'the most' the claimant 'can still do despite' physical and mental limitations that affect her ability to work[,]" by considering all of the claimant's medically determinable impairments regardless of severity.  *Id.* at 635 (quoting 20 C.F.R. § 416.945(a)(1)). The claimant bears the burden of proof through the first four steps of the sequential evaluation.  If the claimant makes the requisite showing, the burden shifts to the SSA at step five to prove "that the claimant can perform other work that exists in significant numbers in the national economy, considering the claimant's residual functional capacity, age, education, and work experience." *Lewis v. Berryhill*, 858 F.3d 858, 862 (4th Cir. 2017) (internal citations omitted).

At step one in this case, the ALJ and Appeals Council found that Plaintiff had not engaged in substantial gainful activity "since December 1, 2020, the amended alleged onset date." (Tr. 17). At step two, the determined that Plaintiff suffered from the following severe impairments: "status post left shoulder arthroscopy; tinnitus and left hearing loss; cervical degenerative disc disease; and obesity." *Id.*

At step three, the ALJ and Appeals Council determined that Plaintiff's impairments or combination of impairments do not meet or equal one of the listed impairments in the regulations. *Id.* at 22; 20 CFR §§ 404.1520(d), 404.1525 and 404.1526. Finding that Plaintiff had not proved that one or more of the above-mentioned severe impairments met or equaled one of the listed impairments in the SSA regulations, the ALJ determined Plaintiff's RFC as follows:

> [T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except that she can occasionally reach overhead on the left; she can frequently climb ramps and stairs and occasionally climb ladders, ropes, and scaffolds; she can occasionally crawl; she can never work at unprotected heights and can work with moving mechanical parts no more than frequently; and she can tolerate an environment with no more than a moderate noise.

*Id*. The ALJ found that the Plaintiff was unable to perform past relevant work as a school bus driver and driving instructor.  *Id.* at 27.  Finally, given Plaintiff's RFC, age, education, and work experience, the ALJ determined that prior to August 15, 2023, Plaintiff could perform work as an

Office Helper, with approximately 135,000 jobs in the national economy, a routing clerk, with approximately 39,000 jobs in the national economy, or as a clerical checker, with approximately 68,000 jobs in the national economy. *Id.* at 28. In reaching that decision, the ALJ reasoned in part,

> Pursuant to SSR 24-3p, the vocational expert has identified the data source(s) they relied on and provided their general approach to estimating job numbers. Specifically, the vocational expert testified that he utilizes a variety of resources to include the Occupational Employment Statistics (OES) and the Occupational Employment Wage Statistics (OEWS) put out by the Bureau of Labor Statistics. He also uses Job Browser Pro with SkillTRAN and other resources. His general approach to estimating job numbers is based on his knowledge and experience and observation of jobs, referencing the standard occupational classification codes in the OEWS, which provides numbers of jobs based on that general classification. He only provides job numbers related to full-time, unskilled work that would meet the conditions in the hypothetical questions.
>
> For the reasons described above, the vocational expert's testimony is accepted in accordance with SSR 24-3p.
>
> Based on the testimony of the vocational expert, the undersigned concludes that, prior to the established onset date of disability, considering the claimant's age, education, work experience, and residual functional capacity, the claimant was capable of making a successful adjustment to other work that existed in significant numbers in the national economy. Prior to August 15, 2023, a finding of "not disabled" is therefore appropriate under the framework of the above-cited rule in the Medical-Vocational Guidelines.

*Id.* at 28.  Thus, the ALJ concluded that prior to August 15, 2023, Plaintiff was not disabled but became disabled and has been on disability starting on that date and through the date of the ALJ's decision. *Id.* at 29.

### III.    Legal Standard

The Court reviews an ALJ's decision to ensure that the ALJ's findings are supported by substantial evidence and were reached through an application of correct legal standards. *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012).  "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion, . . . [which] consists of more than a mere scintilla of evidence but may be less than a preponderance." *Id.* (other citation and internal quotations omitted).  In accordance with this standard, the Court does not "undertake to reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the ALJ." *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005).  Instead, "[w]here conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." *Id.*

### IV.    Analysis

Plaintiff brings a unique argument before the Court, whereby she argues not that the ALJ contravened any particular Social Security Ruling (an "SSR") though the incorrect application of the proper legal standards, but instead that "SSR 24-3p is contrary to law and was promogulated in excess of Agency authority." (ECF No. 13 at 5).[2]  Thus, Plaintiff urges that because SSR 24-3p "is not lawful, the ALJ was required to resolve the apparent conflict between occasional overhead reaching and the frequent reaching that all three Step Five jobs require per the DOT." *Id.* at 3.  To that end, the Commissioner highlights that Plaintiff "does not dispute the reliability of that testimony. She simply hypothesizes that certain rules in place at the time of her administrative hearing, delineated in Social Security Ruling (SSR) 24-3p, were not properly promulgated." (ECF No. 17 at 1).  On the merits, the Commissioner argues that "SSR 24-3p is a valid interpretative rule updating the agency's expectations for vocational evidence." *Id.*

1.  Statutory Framework

Plaintiff specifically challenges SSR 24-3p under the Administrative Procedure Act, 5 U.S.C. §§ 551–559 (the "APA").  Citing to the Sixth Circuit, Plaintiff notes, "The APA sets different procedural requirements for 'legislative rules' and 'interpretive rules': the former must be promulgated pursuant to notice and-comment rulemaking; the latter need not." (ECF No. 13 at 6) (citing *Tennessee Hospital Ass'n. v. Azar*, 908 F.3d 1029, 1042 (6th Cir. 2018)). Generally, when an agency "attempts to issue a legislative rule without abiding by the APA's procedural requirements, the rule is invalid." *Tennessee Hospital Ass'n.*, 908 F.3d at 1042.  Plaintiff posits the difference between a legislative and nonlegislative rule turns on whether the action in question "simply interprets existing law or results in a substantive change to existing law." (ECF No. 13 at 6) (citing Todd Garvey, *A Brief Overview of Rulemaking and Judicial Review*, CONG. RSCH. SERV. REP. NO. R41546 (March 27, 2017) available at https://www.congress.gov/crs-product/R41546 (last visited: July 14, 2026).

It is true that the Commissioner must and does adhere to the APA's procedures described above.  *See Benjamin C. v. Bisignano*, Case No. 1:25-cv-01341-RLH, 2026 WL 1682580, at *1 (C.D. Ill. June 10, 2026) (citing *Perez v. Mortgage Bankers Ass'n*, 575 U.S. 92, 96 (2015)). However, the SSA also issues its own rulings by way of its SSRs.  *See id.*  SSRs are "interpretive rules intended to offer guidance to agency adjudicators." *Lauer v. Apfel*, 169 F.3d 489, 492 (7th Cir. 1999).  Therefore, they "do not have the force of law or properly promulgated notice and comment regulations," but are nonetheless "binding on all components of the Social Security Administration." *Id. (*quoting 20 C.F.R. § 402.35(b)(1)).  Plaintiff asks this Court to determine that SSR 24-3p is improperly characterized as interpretive "because it results in a substantive change to a representative's affirmative duties under 20 CFR §§ 404.1740, 416.1540." (ECF No. 13 at 6).

SSR 24-3p offers guidance for asking vocational specialists ("VS") and vocational experts ("VE") questions about evidence at Step Five of the SSA's sequential framework.  SSR 24-3p, 2024 WL 5256890, at *1.  SSR 24-3p explains that

---

[2] When the Court cites to a specific page number or range of page numbers, the Court is referring to the page numbers provided in the electronic filing stamps located at the top of every electronically filed document. If there are none, the Court is referring to the page number of the PDF.

> [i]n 2000, we issued SSR 00-4p, which explains that, before relying on VS and VE evidence to support a disability decision, our adjudicators must (1) identify and obtain a reasonable explanation for any conflicts between occupational information provided by a VS or VE and information in the Dictionary of Occupational Titles (DOT), including its companion publication, the Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles; and (2) explain in the determination or decision how any conflict that has been identified was resolved.

*Id.* at *2.  Although the SSA continues "to recognize the DOT as a valid and reliable source of occupational information" and continues to "use it in adjudication," SSR 24-3p acknowledges rescinds and replaces SSR 00-4p to "acknowledge that the DOT is not the only reliable source of occupational information." *Id.*  Specifically, SSR 24-3p "explains [the SSA's] standard for evaluating whether vocational evidence is sufficient to support a determination or decision" and no longer requires its "adjudicators to identify and resolve conflicts between occupational information provided by VSs and VEs and information in the DOT." *Id.*

Plaintiff argues that through SSR 24-3p, the Commissioner "is impermissibly legislating issue forfeiture, while simultaneously telling representatives that the Agency can now base disability determinations on "any reliable" and "commonly used" source of occupational information in the vocational profession that the vocational experts profess is "appropriate." (ECF No. 13 at 6-7).  This is not the first time this specific question has come before a federal court.

In *Benjamin C. v. Bisignano*, the Central District of Illinois considered this same question, argued by the same counsel.  *Benjamin C.*, 2026 WL 1682580, at *2 ("He argues that SSR 24–3p—although couched as an "interpretative ruling"—actually "represents a seismic shift" in how the SSA decides individual cases.).  As the Court there recognized, "Step five presents a unique challenge because it asks ALJs to speculate about jobs the claimant could hypothetically perform." *Id.* To do so, that court and SSR 24-3p recognize that ALJ's often rely on VS and VE testimony.  In turn, those experts often "rely on a variety of sources and tools, as well as their knowledge of the job market, experience placing individuals in jobs, and surveys of employers." *Id.* (quoting *Chavez v. O'Malley*, 96 F.4th 1016, 1021 (7th Cir. 2024)).  One such tool is frequently the DOT, as SSR 24-3p contemplates.

As *Benjamin C.* recognized, when there is an apparent conflict between a VE's testimony as to possible jobs in the national economy and the requirements for those jobs in the DOT, some courts find that the ALJ must resolve the conflict.  *E.g.*, *Viverette v. Comm'r of Soc. Sec.*, 13 F.4th 1309, 1315 (11th Cir. 2021) (remanding a case when an ALJ limited a plaintiff to simple tasks yet concluded without resolving a conflict that the plaintiff was capable of working a DOT position that required greater capability notwithstanding a VE's testimony that the plaintiff could perform the work).  To date, it seems that Fourth Circuit "has not addressed the issues [*Viverette*] raises.[3]" *Natasha B.C. v. King*, Case No.: 4:23-cv-5473-SAL, 2025 WL 314967, at *6 (D.S.C. Jan. 28,

---

[3] In fact, Courts in the Fourth Circuit have often distinguished *Viverette*, but on a different issue. *E.g.*, *Carpenter v. Acting Commissioner of Social Security Administration,* C/A No. 5:23-37-KDB, 2023 WL 7726706, at *5 n.3 (W.D.N.C. Nov. 15, 2023) (discussing *Viverette's* reasoning underlying whether there existed enough jobs in the national economy).

2025).  In an effort to resolve this issue, the SSA issued SSR 00-4p—now reversed and replaced by SSR 24-3p.  Under the old ruling, ALJs were required to "ask whether a VE's testimony conflicts with information provided in the DOT before relying" on it.  *Weatherbee v. Astrue*, 649 F.3d 565 569 (7th Cir. 2011).  If any conflict was apparent, the ALJ had a duty to resolve it.  *See id.* "It turns out that SSR 00–4p created more issues than it solved. That's because asking ALJs and vocational experts to identify and explain conflicts with the DOT is time consuming." *Benjamin C.*, 2026 WL 1682580, at *3.  Thus, SSR 24-3p lifted the requirement to "identify and resolve conflicts between" expert testimony and the DOT. *Id.* Rather, SSR 24-3p requires VEs to "identify the sources of the data they use and ... explain their general approach to estimating job numbers." 2024 WL 5256890, at *4.  If a VE's source "defines exertion, education, or skill levels differently than [the SSA's] regulations," the VE must "explain the difference." *Id.*  In the event that the VE does not do so, the ALJ must develop a record upon which the ALJ's findings are properly supported in the five-step sequential process.  Ultimately, and at issue here, SSR 24-3p expects representatives at a claimant's hearing to "raise any relevant questions or challenges about the VE's testimony at the time of the hearing and to assist in developing the record through appropriate questions to the VE."  *Id.*  Plaintiff argues that this expectation goes beyond "interpretation" under the APA and therefore warrants reversal. (ECF No. 13 at 12).

2. The Court follows *Benjamin C.*'s Jurisdictional Analysis

*Benjamin C.* answered this question in Illinois.  There, the court opened by noting that this argument suffers from "two procedural flaws." *Benjamin C.*, 2026 WL 1682580, at *3.  First, as here, the Complaint omitted any reference to the APA.  Second, and perhaps not so here, the plaintiff there did not argue that the ALJ committed any error.  Here, the lion's share of Plaintiff's argument is the *Benjamin C.* challenge to SSR 24-3p.  Plaintiff tries to connect the argument to an ALJ error, urging that the ALJ erred by failing to resolve the apparent conflict between "occasional overhead reaching and the frequent reaching that all three Step Five jobs require per the DOT."  In support of that argument, Plaintiff applies the reversed SSR 00-4p requirements.

To begin, the Court observes a similar strategy here to that in *Benjamin C.*, which was "entirely academic" and made "no attempt to anchor his challenge to the facts of this case."  While the strategy is not entirely the same, it is substantially similar, now with a slightly new twist to argue the ALJ erred by failing to follow SSR 00-4p's requirements. Although that portion of Plaintiff's brief does argue some facts of the case, SSR 00-4p is no longer binding upon an ALJ and has been reversed and replaced by SSR 24-3p.  Nor can the Court find any basis upon which a conclusion that SSR 00-4p would be the proper framework even if the Court decided to invalidate SSR 24-3p. The Court cannot simply apply the standards of a plaintiff's choosing when a plaintiff is unhappy with the SSA's application of differing operative standards.  Therefore, the Court declines to find as a matter of law that failure to observe a reversed ruling constitutes reversible error.[4]

---

[4] The Court notes that this argument does render a slightly different record than that in *Benjamin C.*, in which the court noted that the plaintiff did not argue that had SSR 24-3p not applied, the result would have changed.  *Benjamin C.*, 2026 WL 1682580, at *4.  However, in view of the brief as a whole, the Court does not find that such a slight difference renders *Benjamin C.* inapposite for the reasons described herein.  Moreover, while *Benjamin C.* is an out-of-Circuit case, the Court finds that the general approach to resolving this question is appropriate.  Therefore, the Court will rely on in-circuit precedent to address the issue of redressability and advisory opinions but observes that *Benjamin C.* provides a helpful reasoning framework in the Seventh Circuit.

As in *Benjamin C.*, Plaintiff asks the Court to offer "judicial input" about whether the SSA's adoption of SSR 24–3p comported with the APA's notice-and-comment requirements. *Benjamin C.*, 2026 WL 1682580, at \*4.  Here, Plaitniff urges, "[g]iven the gravity of this issue and its mass applicability to SSA disability cases nationwide, it is Plaintiff's position that judicial input on the legality of SSR 24-3p is necessary." (ECF No. 13 at 23.  In keeping with the academic nature of the *Benjamin C.* arguments, Plaintiff's hypothetical arguments here posit that "[o]ne cannot say here that the ALJ's use of SSR 24-3p clearly had no bearing on the procedure or outcome of Plaintiff's case."  *Id.*  Without further explanation, Plaintiff argues "had SSR 24-3p been put through a proper notice-and-comment procedure, there is no certainty the Agency would have adopted it."  *Id.* By extension, Plaintiff avers that without SSR 24-3p, "the VE would have tailored his answers to the ALJ's hypotheticals under the governing rules of the old SSR 00-4p, potentially altering the VE's answers."  *Id.*

Although the Commissioner argues against the merits, the Court finds the *Benjamin C.* jurisdictional reasoning dispositive.  Indeed, Article III confines the federal judicial power to the resolution of "Cases" and "Controversies."  U.S. Const. Art. III.  For there to exist an Article III case or controversy, there must exist a personal stake in the case.  *TransUnion LLC v. Ramirez*, 549 U.S. 413, 423 (2021).  To establish standing, "a plaintiff must show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief."  *Id.* (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–561 (1992)).  The federal courts' "judicial power exists only to *redress* or otherwise to protect against injury to the complaining party.'"  *Wells v. Johnson*, 150 F.4th 289, 298 (4th Cir. 2025) (quoting *Warth v. Seldin*, 422 U.S. 490, 499 (1975) (emphasis added)).  "Federal courts do not possess a roving commission to publicly opine on every legal question…And federal courts do not issue advisory opinions."  *TransUnion LLC*, 549 U.S. at 423.  Thus, "the plaintiff must show that the [judicial] remedy will do something to help [her]— 'that [she] personally would benefit in a tangible way from the court's intervention.'"  *Wells*, 150 F.4th at 299 (quoting *Warth*, 422 U.S. at 508)).

Here, the Court observes as did the *Benjamin C.* court that asking for "judicial input" to address the abstract chain of speculative reasoning Plaintiff advances would constitute an advisory opinion.  To begin, the ALJ did not find Plaintiff is not entitled to DIB.  Nor did the ALJ conclude that *one specific* VE recommendation resulted in a limited DIB award.  Rather, the ALJ concluded that Plaintiff is entitled to DIB after August 15, 2023.  Tr. 29.  To the extent that there is some financial harm here, the Court will accept that Plaintiff would have an "injury."  However, Plaintiff's proposed relief—here, invalidating SSR 24-3p—raises only speculative theory of redressability; that is, the ALJ *might* have reached a different conclusion had several other speculative events taken place—events for which there is no supporting evidence, nor any supportive argument.  The Court is not prepared to assume that (1) the SSA would not adopt SSR 24-3p by way of the APA's notice-and-comment procedure; (2) that had the SSA not adopted SSR 24-3p by way of the APA's notice-and-comment procedure, it would have instead reinstated ill-suited SSR 00-4p; (3) that had SSA reinstated SSR 00-4p, the VE would have proposed different jobs in the national economy; and (4) that a hypothetically different VE testimony would change the ALJ's ultimate conclusion here, or ultimately redress the alleged harm.  As the foregoing chain of inferences demonstrates, Plaintiff's logic is far too speculative to cross the line from asking for

7

mere "judicial input" to advancing a redressable challenge to an ALJ's reasoning.  As in *Benjamin C.*, Plaintiff here "has offered nothing to suggest that [her] injury would be redressed." *Benjamin C.*, 2026 WL 1682580, at *5.

    3.   The APA Does Not Authorize Hypothetical Challenges to an SSR

The *Benjamin C.* court further observed that if the APA applies at all, as it is only available to challenge agency actions "for which there is no other adequate remedy in a court," and the SSA's judicial review provision may well constitute such an adequate remedy, the APA does not authorize challenges such as these.  *Id.* (quoting 5 U.S.C. § 704).  Indeed, the APA authorizes suit only by "[a] person suffering legal wrong because of agency action" or by a person "adversely affected or aggrieved by agency action within the meaning of a relevant statute." 5 U.S.C. § 702. Thus, similar to the reasoning above, a proper APA challenge requires an injury and a "sufficient causal connection between the agency action and the injuries alleged." *Benjamin C.*, 2026 WL 1682580, at *5 (quoting *Cornell Vill. Tower Condo.* v. *Dep't of Hous. & Urb. Dev.*, 750 F. Supp. 909, 919 n.5 (N.D. Ill. 1990) (internal quotations omitted).  For the reasons explained above, there is no evidence that SSR 24-3p has any causal relationship between the SSA's conclusion that Plaintiff was not entitled to DIB prior to August 14, 2023, let alone any evidence that reversing SSR 24-3p would change the reasoning behind reversing SSR 00-4p such that it would be reinstated and result in Plaintiff's preferred outcome.

Therefore, I will affirm the case for further proceedings consistent with the standards set forth in this Opinion.

**V.     Conclusion**

In sum, the Court finds that the above-captioned case asks the Court to issue an impermissible advisory opinion.  Therefore, the Court has no jurisdiction to do so.  The ALJ's opinion is therefore AFFIRMED.  The Clerk of the Court is accordingly asked to CLOSE this case.

Despite the informal nature of this letter, it is an Order and Opinion of the Court, and the Clerk is directed to docket it as such.

Sincerely yours,

_____/s/_____

J. Mark Coulson
United States Magistrate Judge

8